# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

In re

**DAVID BERTRAND WARWOOD**,

Debtor.

Case No. **12-60132-11**

# MEMORANDUM of DECISION

At Butte in said District this 22nd day of April, 2013.

In this Chapter 11 case, after due notice, a hearing was held April 9, 2013, in Butte on confirmation of Debtor's Second Amended Chapter 11 Plan filed January 4, 2013, at docket entry no. 138. The sole objection to confirmation was filed by CLS Mortgage, Inc.; CLS Escrow, Inc.; Victor Perger and Cynthia Perger; American Capital Funding; Duane P. Carroll and Beatrice Carroll; Donald E. Millard and Nancy E. Millard; Gerald W. Miller and Eloise J. Miller; Arthur E. Tinsley; Timothy R. Hattenburg and Rebecca L. Hattenburg; Alan Pharness and Signe Pharness; Thomas M. Mclaughlin; and Paul F. Sands and Gloria P. Sands (collectively, "CLS Mortgage"). Debtor was represented at the hearing by James A. Patten of Billings, Montana, and CLS Mortgage was represented at the hearing by Mark L. Evans of Bozeman, Montana. Debtor and Realtor Sam Martin testified; and Debtor's Exhibits 1 through 11 were admitted into evidence. At the conclusion of the hearing, the Court took the matter of confirmation of Debtor's Plan under advisement. After review of the record, ballot report, and

1

applicable law, CLS Mortgage's objection to confirmation is overruled and Debtor's Plan will be confirmed as satisfying the requirements of 11 U.S.C. § 1129.

## JURISDICTION

This Court has exclusive jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a). Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## BACKGROUND

Debtor owns four tracts of land located in Gallatin County, Montana, which were identified at the hearing as Tracts 1, 2, 3, and 4. Debtor's home is located on Tract 1. Tract 1 is comprised of roughly 150 acres. Debtor began building a hunting lodge and hunting cabins on Tract 2, which consists of another 150 acres. The foundation of the hunting lodge is completed. One hunting cabin is near completion and five other cabins are not finished. There is also a rental home on Tract 2.

Debtor's Tract 3 consists of 248 acres and includes 2 hunting cabins. Tract 3 borders property owned by the United States Forest Service. Tract 4 is unimproved, and consists of 163 acres. The aforementioned Tracts of land have been in Debtor's family since the late 1880s, and have been handed down from generation to generation. Debtor was gifted the four Tracts of land, free and clear of any liens or encumbrances.

Debtor has listed Tracts 1, 2, 3 and 4 for sale through Sam Martin, a Realtor in Gallatin County. Sam Martin believes that within a period of approximately 8 months, Debtor can sell Tract 1 for $1,425,000; sell Tract 2 for $1,275,000; sell Tract 3 for $1,175,000; and sell Tract 4 for $850,000. Debtor believes Martin's opinions of value are low, arguing Tracts 1, 2, 3 and 4

2

are worth something more than stated by Martin. Prior to filing bankruptcy, Debtor received a verbal offer of $650,000 on Tract 3, which offer Debtor did not accept.

In approximately 2007 or 2008, Debtor obtained loans, using various of the Tracts as security, to begin construction of the hunting lodge and hunting cabins. As part of this endeavor, CLS Mortgage loaned Debtor money in November 2008. CLS Mortgage has a first position Deed of Trust against Tract 3. CLS Mortgage contends Tract 3 was worth $750,000 to $950,000 in November of 2008. As of April 9, 2013, Debtor owed CLS Mortgage $481,187.88. The obligation owed to CLS Mortgage fully matured and was due in full on November 21, 2011.

Through his Chapter 11 Plan, as amended by subsequent stipulations, Debtor proposes to sell as many Tracts as necessary to pay all administrative claims and Class I, II, III, IV, V, VI, VII, IX, and X claims, including CLS Mortgage.[1] Per Exhibit 1, Debtor's debts total $1,409,896.61. Debtor's proposed Plan provides that in the event the allowed claims are not paid within 20 months from the confirmation date, Debtor will sell his remaining property by an auction sale that is to be completed no later than June 13, 2015. Debtor's Plan specifically provides that with respect to the auction sale: "The reserve set on each parcel shall be the total of the (a) accrued and unpaid property taxes, (b) the amount of the Allowed Claim of the first, non-property tax, lien holder (together, the 'First Liens') (c) the cost of sale calculated at 5.5% of the First Liens, and (d) the capital gains tax, estimated at 23% of the First Liens." Debtor

---

[1] Debtor proposes in his Plan to pay the Class VIII secured claim over a period of 48 months through monthly payments of $291.00. If the Class IX priority claims and Class X unsecured claims are not paid in full through the sale of Tracts 1, 2, 3, and 4, Debtor agrees to make monthly payments to said creditors from his disposable income.

proposes to pay CLS Mortgage 4.25 % per annum on the principal portion of its allowed claim. Pursuant to subsequently filed stipulations, Debtor has agreed to pay interest to the Class IV allowed secured claimant as follows: "(a) if paid before June 30, 2014, 4.25%; (b) if paid before September 30, 2014, 5.25%; (c) if paid before December 31, 2014, 6.25%; if paid before March 31, 2015, 7.25%; and (d) if on or after April 1, 20l5, 8%." Debtor has also agreed to pay the Class III and Class V claimants interest as follows: "(a) if paid before June 30, 2014, 4.25%; (b) if paid before September 30, 2014, 5.25%; (c) if paid before December 31, 2014, 6.25%; if paid before March 31, 2015, 7.25%; and (d) if on or after April 1, 2015, 8%."

The Chapter 11 Ballot Report filed April 8, 2013, at docket entry no. 171, shows that Class II, which consists of CLS Mortgage, voted to reject Debtor's Plan. Classes V, VI and X voted to accept Debtor's Plan. By Stipulation, Classes III and IV are deemed to have cast ballots accepting Debtor's Plan.

## APPLICABLE LAW and DISCUSSION

CLS Mortgage opposes confirmation of Debtor's Plan arguing Debtor's Plan is not feasible as required by 11 U.S.C. § 1129(a)(11), that Debtor's Plan fails to satisfy the best interest of creditors test found at 11 U.S.C. § 1129(a)(7), and that Debtor's Plan is not fair and equitable as required by 11 U.S.C. § 1129(b). CLS Mortgage also objects to confirmation of Debtor's Plan alleging Debtor's Plan denies or limits CLS Mortgage's right to credit bid at any auction of Tract 3. Finally, CLS Mortgage objects to Debtor's proposed interest rate of 4.25% per annum.

With regard to the applicable requirements of 11 U.S.C. § 1129(a), the Court finds that both Debtor and Debtor's Plan comply with all provisions of the Bankruptcy Code, thus

4

satisfying § 1129(a)(1) and § 1129(a)(2). In addition, based on the testimony, the Court finds that Debtor's Plan, which proposes full payment, together with interest, of all classes of creditors' claims, has been proposed in good faith and not by any means forbidden by law in satisfaction of 11 U.S.C. § 1129(a)(3). Also, compensation and payment of professional services is conditioned under the Plan upon approval of the Bankruptcy Court as required by § 1129(a)(4).

Subsections 1129(a)(5), 1129(a)(6) and 1129(a)(13) are not applicable to this case. Section 1129(a)(8) is equally not applicable because Debtor is seeking confirmation under § 1129(b). As noted above, Debtor's Plan proposes full payment, together with interest, of all classes of creditors' claims. Based upon the evidence presented at the confirmation hearing, the Court finds Debtor's Plan satisfies the "best-interest-of-creditors" test found at § 1129(a)(7). Debtor's Plan also provides for payment in full of any claims covered by 11 U.S.C. § 507 and in the manner provided therein, thus satisfying the requirements of § 1129(a)(9). Moreover, at least one impaired class has voted affirmatively in favor of Debtor's Plan, thus satisfying 11 U.S.C. § 1129(a)(10) of the Bankruptcy Code. *In re Lewis Indus.*, 75 B.R. 862, 865 (Bankr. D.Mont. 1987).

Similarly, after consideration of Martin's testimony and the exhibits, particularly Exhibits 10 and 11, the Court concludes Debtor's liquidating Plan also meets the feasibility test of § 1129(a)(11), that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." *Prudential Ins. Co. of America v. Monnier Brothers (In re Monnier Brothers)*, 755 F.2d 1336, 1441 (8th Cir. 1985); *In re Lewis Indus.,* 75 B.R. at 868.

*In re Roberts Rocky Mountain Equip. Co., Inc.*, 76 B.R. 784, 790 (Bankr. D.Mont. 1987), *In re Great N. Recreation Center, Inc.*, 74 B.R. 846, 852 (Bankr. D.Mont. 1987) and *In re Martin*, 66 B.R. 921, 925 (Bankr. D.Mont. 1986).  Finally, Debtor's Plan provides for the payment of all bankruptcy fees in accordance with § 1129(a)(12).

Because at least one impaired class of creditors has rejected Debtor's Plan, Debtor is seeking confirmation under 11 U.S.C. § 1129(b), which provides:

> [I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

There are two conditions for a judicial cram down under § 1129(b).  First, all requirements of § 1129(a) must be met, save for the plan's acceptance by each impaired class of claims or interests, *see* § 1129(a)(8).  Secondly, the objection of an impaired creditor class may be overridden only if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." § 1129(b)(1).  As to a dissenting class of impaired creditors, such a plan may be found to be "fair and equitable" only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(I), or, in the alternative, if "the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property," § 1129(b)(2)(B)(ii).  *Indian National Finals Rodeo*, 453 B.R. at 401; *Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 441-42, 119 S.Ct. 1411, 1415-16 (1999).  According to §

6

1129(b)(2)(C)(ii), a plan is fair and equitable as long as the holder of any interest junior to the dissenting impaired class does not receive any property under the reorganization plan.

The § 1129(b)(2) cramdown provision specifies that a fair and equitable plan provide one of three alternatives for the holders of secured claims: (A)(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; or (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or (iii) for the realization by such holders of the indubitable equivalent of such claims. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, ___ U.S. ___, 132 S.Ct. 2065, 2069-70, 182 L.Ed.2d 967 (2012); *In re Ambanc La Mesa Ltd. Pship.*, 115 F.3d 650, 653 (9th Cir. 1997); *In re Boulders on the River*, 164 B.R. 99, 105 (9th Cir. BAP 1994). At issue in the instant case is § 1129(b)(2)(A)(i)(II): whether "each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." § 1129(b)(2)(A)(i)(II); *In re McKay*, 14 Mont. B.R. 296, 303 (Bankr. D.Mont. 1995).

Debtor's Plan proposes no deferred cash payments to CLS Mortgage, but instead

7

proposes payment in full of CLS Mortgage's allowed secured claim, with interest at the rate of 4.25%, through either a sale of some or all of the Tracts within 20 months or a sale by auction of Tract 3 by June 13, 2015. The only admissible evidence regarding valuation was presented by Debtor through Realtor Sam Martin. Martin believes Debtor can sell Tracts 1, 2, 3, and 4 within approximately 8 months for $4,725,000, which includes $1,175,000 for Tract 3. Based upon such valuation, Debtor has sufficient equity in Tracts 1, 2, 3, and 4 to pay the costs of sale, capital gains and also pay CLS Mortgage's secured claim, which CLS Mortgage claims was $481,187.88, as of April 9, 2013, in full. The Court thus finds that Debtor's Plan satisfies the payment requirement of § 1129(b)(2)(A)(i)(II).

With respect to Debtor's proposed interest rate, the Ninth Circuit Bankruptcy Appellate Panel in *Boulders on the River*, 164 B.R. at 105, noted that the Ninth Circuit applies the "formula rate" approach for determining the interest payable on the deferred payment of an obligation under the cramdown. *See also In re Fowler*, 903 F.2d 694, 697 (9th Cir. 1990); *In re Camino Real*, 818 F.2d 1503, 1508 (9th Cir. 1987). Under this approach the court starts with a base rate and adds a risk factor based on the risk of default and the nature of the security. *Boulders on the River*, 164 B.R. at 105; *In re Fowler*, 903 F.2d at 697. The interest rate determination is to be made on a case-by-case basis. *Boulders on the River*, 164 B.R. at 105; *In re Camino Real*, 818 F.2d at 1508.

The Supreme Court addressed the calculation of present value interest under § 1325(a)(5)(B)(ii) in *Till v. SCS Credit Corp.*, 541 U.S. 465, 479-80, 484-85, 124 S.Ct. 1951, 1961-62, 1964-65, 158 L.Ed.2d 787 (2004) (plurality opinion), and set "prime plus" or the formula rate as the proper method for determining the interest rate that would provide present

value.  Most courts that have considered the issue have held that, since § 1325(a)(5)(B)(ii) remains unchanged under BAPCPA, *Till* remains valid under BAPCPA.  *Trejos v. VW Credit, Inc., et al. (In re Trejos)*, 374 B.R. 210, 220 n.9 (9th Cir. BAP 2007).  Given the same phraseology of "value, as of the effective date of the plan" used in *Till* as used § 1129(a), the cram down interest rate should be determined the same in Chapter 11 and 13 cases.

A contract rate of interest may be evidence of the proper rate for a plan, but it is not conclusive.  *See In re Hungerford*, 19 Mont. B.R. 103, 112 (Bankr. D.Mont. 2001) (citing cases).  The Supreme Court placed the evidentiary burden on the creditor to present evidence of a higher interest rate (the portion associated with the risk factor), reasoning that the creditors "are likelier to have readier access to any information absent from the debtor's filing."  *Till*, 541 U.S. at 479, 124 S.Ct. at 1961.

The Court takes judicial notice that the prime rate of interest has been 3.25 percent for some period of time.  CLS Mortgage offered no evidence regarding an appropriate risk factor.  Given CLS Mortgage's failure to sustain its burden with respect to the risk factor, the Court concludes that Debtor's proposed risk factor of 1 percent is adequate in this case.

Given the full satisfaction of creditors' claims under Debtor's Plan, the Court does not consider this a close call.  The Court finds and concludes, based on the testimony and exhibits, and the record in this case, that Debtor's Plan is sufficiently funded to pay creditors as provided therein, and that the Plan is feasible, fair and equitable, and satisfies all requirements for confirmation under 11 U.S.C. § 1129.

Finally, the Court finds nothing in Debtor's Plan that would either deny or limit CLS Mortgage's right to credit bid at any sale or auction of Tract 3.  Notwithstanding, given the

recent decision in *RadLAX,, supra,* and Debtor's failure to otherwise show any cause, Debtor cannot, under 11 U.S.C. § 1129(b)(2)(A), sell Tract 3 free and clear of liens without permitting CLS Mortgage to credit-bid.

For the reasons discussed above, the Court will enter a separate order providing as follows:

**IT IS ORDERED** that CLS Mortgage's objections to confirmation of Debtor's Plan are overruled; and Debtor's Second Amended Chapter 11 Plan filed on January 4, 2013, at docket entry no. 138, as supplemented and amended by the Stipulations filed April 4, 2013, at docket entry nos. 157, 158, and 163, is confirmed.

                                          BY THE COURT

                                          HON. RALPH B. KIRSCHER
                                          U.S. Bankruptcy Judge
                                          United States Bankruptcy Court
                                          District of Montana